IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 16-cv-03080-RBJ

EUGENE CHRISTENSON and SHARON CHRISTENSON,

    Plaintiffs,

v.

CITIMORTGAGE, INC.,

    Defendant.

## ORDER

This matter is before the Court on defendant CitiMortgage, Inc.'s motion to dismiss [ECF No. 5]. For the reasons below, the Court GRANTS that motion.[1]

## I. FACTS

This case is but the latest chapter in an ongoing saga over the mortgage encumbering plaintiffs Eugene and Sharon Christenson's property in Grand Junction, Colorado. *See Christenson v. Citimortgage, Inc.*, No. 12-cv-02600-CMA-KLM, 2013 WL 5291947, at *2 (D. Colo. Sept. 18, 2013). The saga began when plaintiffs defaulted on the mortgage on their property in May of 2010. ECF No. 5-3 at 2–3 (December 1, 2014 letter); Def.'s Mot. to Dismiss,

---

[1] At the outset, I must say that I have found the language plaintiffs' counsel has used in his briefs to be over-the-top and quite off-putting. My practice standards request that lawyers appearing before me refrain from making statements such as "the opponent's argument is 'outrageous' or 'absurd,'" because "[l]ife is too short for that stuff." That is something I firmly believe. My hope is that plaintiffs' counsel will come to understand that to be true as well.

1

ECF No. 5, at 3 (representing that the date of plaintiffs' default was in May of 2010).[2] Several months later on October 8, 2010 defendant, which holds the promissory note and deed of trust on plaintiffs' property and held them at the time plaintiffs defaulted, subsequently commenced foreclosure proceedings. ECF No. 5-8 (Notice of Election and Demand for Sale).

With foreclosure fast approaching, plaintiffs tried four things to try to prevent the loss of their home. First, they sent defendant a letter dubbed a "formal written inquiry under" the Real Estate Settlement Procedures Act or "RESPA" (the "March 2011 letter"). *Christenson*, 2013 WL 4291947, at *3; ECF No. 5-2 (March 31, 2011 letter). That letter requested information from defendant about its "loss mitigation" activities to date—in other words, information that might enable plaintiffs to determine whether defendant had met its legal obligations to work with plaintiffs to avoid the loss of their home. *See* ECF No. 5-2 at 2. Defendant allegedly failed to respond. *Christenson*, 2013 WL 4291947, at *3.

Second, in June of 2011 plaintiffs filed for an admittedly "unnecessary" Chapter 13 bankruptcy. *See id.*; ECF No. 5-1 at 2 (October 30, 2014 letter); ECF No. 5-3 at 2 (December 1, 2014 letter). That pending bankruptcy automatically stopped plaintiff's foreclosure proceedings for the time being. *See Christenson*, 2013 WL 5291947, at *3; 11 U.S.C. § 362(a).

Third, with their foreclosure on pause plaintiffs filed suit against defendant before another division within this Court on October 1, 2012. *See Christenson*, 2013 WL 5291947, at *3. In that lawsuit, plaintiffs asserted, among other things, that by failing to respond to their letter defendant violated § 2605(e) of RESPA. *See id.* However, my colleague, Judge Christine

---

[2] If a "document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Likewise, "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Hodgson v. Farmington City*, 16-4120, 2017 WL 83749, at *2 (10th Cir. Jan. 10, 2017) (unpublished) (internal quotation marks and citation omitted).

Arguello, wasn't buying it.  *Id.*at \*\*4–6.  Dismissing plaintiffs' RESPA claim on September 18, 2013, Judge Arguello held that defendant had no legal obligation to respond to plaintiffs' letter under 12 U.S.C. § 2605(e).  *Id.*  She explained that that requirement only comes into play when a borrower requests information related to the "servicing" of a mortgage—i.e., the scheduled payments of the loan's principal and interest or other pre-established payments—not when a borrower requests information related to loss mitigation activities.  *Id.*

Finally, roughly one month after Judge Arguello denied plaintiffs' motion to reconsider that holding, see *Christenson v. Citimortgage, Inc.*, No. 12-cv-02600-CMA-KLM, 2014 WL 4637119, at \*3 (D. Colo. Sept. 16, 2014), and roughly one month after plaintiffs' bankruptcy case was finally dismissed, ECF No. 5-13, plaintiffs sent defendant a second "RESPA" letter ("the October 2014 letter"), ECF No. 5-1.  As both parties acknowledge, this second letter was almost identical to plaintiffs' first.  *See* Compl., ECF No. 3, at ¶15 (admitting that the October 2014 letter "was largely, but not completely, the same as a letter Plaintiffs sent in 2011"); ECF No. 5 at 5.  However, it differed in one seemingly important respect.  Unlike their March 2011 letter, plaintiffs' October 2014 letter added a request that defendant explain why it had not accepted payments plaintiffs purportedly made while in bankruptcy on their loan and their arrearage.  ECF No. 5-1 at 4.

This time defendant responded.  *See* ECF No. 5-3 (December 1, 2014 letter).  It advised plaintiffs that, prior to commencing foreclosure proceedings years ago defendant had reviewed plaintiffs' account history and offered them numerous loss mitigation options.  *Id.* at 2.  It reminded plaintiff that it had sent them letters in 2009 and 2010 apprising them of such options and attached those letters again for plaintiffs' reference.  *Id*. at 17–33 (letters).  Furthermore, defendant informed plaintiffs that it had operated pursuant to the bankruptcy court's

3

reorganization plan during plaintiffs' bankruptcy, and that it had subsequently withdrawn foreclosure. *Id.* at 2. Finally, among other things, defendant explained that plaintiffs could still apply for loss mitigation consideration by filling out and returning a workout package application that defendant enclosed with its letter. *Id.* at 2, 34–37. It is unclear whether plaintiffs took defendant up on that offer.

## Procedural History

On July 14, 2016, roughly one month after Judge Arguello entered final judgment in defendant's favor on plaintiffs' other claims in the parties' first lawsuit, see *Christenson v. Citimortgage, Inc.*, 12-CV-2600-CMA-KLM, 2016 WL 7868812, at *10 (D. Colo. June 7, 2016), plaintiffs filed a second suit against defendant, see ECF No. 1. This time, instead of initiating their lawsuit in the District of Colorado, plaintiffs brought suit against defendant for RESPA violations in the Eastern District of Missouri—i.e., the apparent location from which defendant's response to plaintiffs' October 2014 letter originated. *See id*.

There, plaintiffs alleged that although defendant had responded to their October 2014 letter that defendant had nevertheless committed violations of § 2605(e) and § 2605(k) of RESPA by either failing to respond in good faith or by providing false answers to plaintiffs' inquiries. *Id.* at ¶¶1, 20–22. In addition, plaintiffs sought a declaratory judgment that any claim defendant may have against them for breach of their mortgage and acceleration of the debt was a compulsory counterclaim that defendant waived by failing to assert it in the parties' earlier lawsuit. *Id.* at ¶¶23–29.

On August 4, 2016 defendant filed a motion to dismiss plaintiff's complaint. ECF No. 5. Choosing not to decide that motion, Judge Carole E. Jackson (no relation) of the Eastern District of Missouri instead transferred the parties' case to this Court on December 14, 2016. *See* ECF

4

No. 1. Three weeks later plaintiffs filed a motion to amend the second claim within their complaint. ECF No. 21. I granted that motion on February 20, 2017. ECF No. 30. I nevertheless informed the parties that I still considered defendant's motion to be fully briefed and that, after plaintiffs amended that claim, both parties could file short supplements to their briefings before I decided defendant's motion. *Id.*; *see also* Pls.' First Am. Compl., ECF No. 21-1. Both parties subsequently did exactly that. ECF Nos. 34–35.

## II. STANDARD OF REVIEW

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true, *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

## III. ANALYSIS

As mentioned above, plaintiffs assert two claims in this action: (1) a claim for violations of RESPA; and (2) a declaratory judgment on defendant's inability to enforce plaintiffs' default on their mortgage. *See* ECF No. 3 at ¶¶15–29. For the reasons below, I agree with defendant

that both claims must be dismissed. Accordingly, the Court GRANTS defendant's motion to dismiss [ECF No. 5]. I discuss both claims in turn.

### A. Claim One: RESPA Violations.

To put it mildly, plaintiffs' allegations that defendant violated RESPA with its response to their October 2014 letter are confusing. For starters, plaintiffs only actually cite the two RESPA provisions they assert defendant has violated one time in their complaint. *See* ECF No. 21-1 at ¶1. They do not, however, ever cite the specific subsections of those complex statutes they believe pertain to defendant's conduct. Furthermore, despite listing those two statutory provisions as the apparent basis for their RESPA claim, plaintiffs, as well as defendant, argue about other causes of action under different RESPA regulations in their briefings. *See, e.g.*, ECF No. 5 at 10–13; ECF No. 14 at 7–12. Plaintiffs, however, did not discuss these regulations in their amended complaint or even mention them until they filed their response to defendant's motion. *See generally* ECF No. 21-1.

Despite the apparent confusion surrounding how exactly plaintiffs allege defendant violated RESPA, I nonetheless can glean from plaintiffs' filings that they assert three main causes of action under that statute in this lawsuit: (1) a violation of 12 U.S.C. § 2605(e); (2) a violation of 12 U.S.C. § 2605(k)(1)(C); and (3) a violation of 12 U.S.C. § 2605(k)(1)(E), which imposes liability for, among other things, the requirements found in 12 C.F.R. §§ 1024.35 and 1024.39 (portions of "Regulation X").[3] I discuss each in turn.

---

[3] "Regulation X" refers to the regulations implementing RESPA promulgated by both the U.S. Department of Housing and Urban Development ("HUD") and the Consumer Financial Protection Bureau ("CFPB"). *See Berneike v. CitiMortgage, Inc.,* 708 F.3d 1141, 1146 & n.3 (10th Cir. 2013). The CFPB passed 12 C.F.R. § 1024.35 to clarify the types of asserted errors a servicer is required to respond to under 12 U.S.C. § 2605(k)(1)(C). *See Christenson*, 2014 WL 4637119, at *3; Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10,696, 10,739 (Feb. 14, 2013). It passed 12 C.F.R. § 1024.39 to require that a servicer "make a good faith effort[] to establish live contact with a delinquent borrower not later than the 36th day of the borrower's delinquency" in order to

1. **12 U.S.C. § 2605(e).**

Given their prior lawsuit, the parties are probably intimately familiar with Section 2605(e) of RESPA. As briefly discussed earlier, that provision requires a loan servicer to provide a written response to a borrower's inquiry about the borrower's loan under certain narrow circumstances. *See Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012) (explaining that "the statutory duty to respond [under § 2605(e)] does not arise with respect to *all* inquiries or complaints from borrowers to servicers") (emphasis in original).

Specifically, as Judge Arguello explained, § 2605(e) imposes an obligation on servicers to respond to a borrower's "qualified written request" ("QWR") for information relating to "the servicing" of a loan. *Christenson*, 2013 WL 5291947, at **4–6 (labeling these as "loan-servicing QWRs"). Congress subsequently defined the "servicing" of a loan under RESPA to mean "any scheduled periodic payments from a borrower pursuant to the terms of any loan" such as "payments of principal and interest[,]" as well as "other payments with respect to the amounts received from the borrower as may be requested pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). In other words, the "servicing" of a loan refers to ordinary, scheduled payments a borrower makes per the pre-established terms of a loan agreement rather than payments related to loss mitigation or loan modification. *Christenson*, 2013 WL 5291947, at **4–6.

Here, the parties dispute whether Judge Arguello's prior decision in 2013 that plaintiffs' March 2011 letter did not trigger § 2605(e) response obligations is determinative of whether or not plaintiffs' nearly-identical October 2014 letter did. This is an easy call. To the extent those letters are the same and contained inquires related to loss mitigation, Judge Arguello's decision that defendant had no obligation under § 2605(e) to respond is obviously binding on these same

---

"inform such borrower about the availability of loss mitigation options if appropriate." *See* 12 C.F.R. § 1024.39.

7

parties. *See, e.g.*, *State ex rel. Sago By & Through Sago v. O'Brien*, 827 S.W.2d 754, 756 (Mo. Ct. App. 1992) (explaining that issue preclusion or collateral estoppel prevents a party from having multiple opportunities to litigate the same issue if: (1) the issues are identical; (2) there was a judgment on the merits in the earlier case; (3) the parties are the same; and (4) "the party against whom collateral estoppel is asserted had full and fair opportunity to litigate the issue in the previous lawsuit").[4]

But there is a wrinkle. As I pointed out above, plaintiffs' October 2014 letter differed from their March 2011 letter in one important respect—their October 2014 letter asked defendant why it had not accepted certain payments plaintiffs allegedly made during the pendency of their bankruptcy proceedings. ECF No. 5-1 at 4 (¶7); ECF No. 5-2. Thus, the real issue to decide in determining whether or not plaintiffs have stated a claim under § 2605(e) is whether this "additional" inquiry contained within plaintiffs' October 2014 letter constituted a request for information related to the "servicing" of a loan. I say no.

Reasonably construed, plaintiffs' additional inquiries concerned why defendant allegedly refused to accept what appears to be "reinstatement" payments—i.e., payments made to cure plaintiffs' default—that plaintiffs made on their loan as part of their bankruptcy plan. ECF No. 5-1 at 2 (¶7); ECF No. 5-11 at 6 (plaintiffs' Chapter 13 bankruptcy plan); *see also* 11 U.S.C. § 1322(b)(5) (providing that a Chapter 13 bankruptcy plan may provide for the curing a default through regular payments). While such payments could hypothetically be made pursuant to the terms of a mortgage agreement, see, e.g., *Jundy v. Wells Fargo Bank*, N.A., 14-12524, 2015 WL 5697658, at *5 (E.D. Mich. Sept. 29, 2015), and therefore inquiries about them might relate to

---

[4] Because this case was transferred from the Eastern District of Missouri and jurisdiction was proper there, this Court must apply the state law that court would apply. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) ("[T]he transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue.").

8

the "servicing" of a loan, 12 U.S.C. § 2605(i)(3) (Servicing is defined to include "other payments . . . as may be required pursuant to the terms of the loan"), plaintiffs fail to allege that crucial fact here.

Accordingly, I find that their inquiries about their payments to defendant did not concern the periodic, scheduled payments plaintiffs would have made pursuant to pre-established terms of their loan. *See* 12 U.S.C. § 2605(e); *Christenson*, 2013 WL 5291947, at *4. For that reason, plaintiffs have failed to state a claim that defendant violated § 2605(e) because that statutory provision does not apply to any portion of the letter plaintiffs' sent to defendant in October of 2014.[5] *See Christenson*, 2013 WL 5291947, at **4–6; ECF No. 5-1.

2. **12 U.S.C. § 2605(k)(1)(C).**

Next, plaintiffs appear to assert that defendant failed to respond to their October 2014 letter either in good faith or truthfully and thereby violated § 2605(k)(1)(C) of RESPA. *See* ECF No. 21-1 at ¶1 (citing § 2605(k)). That specific subsection of RESPA prohibits a servicer from "fail[ing] to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties[.]" 12 U.S.C. § 2605(k)(1)(C).

In its motion, defendant again argues that it did not have any obligation to respond to plaintiffs' October 2014 letter under § 2605(k)(1)(C) because plaintiffs' letter did not qualify as a request to correct any of the enumerated categories of errors. *See* ECF No. 5 at 10. In particular, it argues that plaintiffs' letter did not request that defendant correct errors relating to "avoiding

---

[5] To the extent plaintiffs argue that the definition of what constitutes a "servicing" inquiry under § 2605(e) changed through CFPB regulations that went into effect in 2014, specifically 12 C.F.R. § 1024.35, I find that Judge Arguello's rejection of that argument highly persuasive and that it also binds plaintiffs. *See Christenson*, 2014 WL 4637119, at *3 (explaining that 12 C.F.R. § 1024.35 interpreted what inquiries constitute an *error-resolution* QWR under § 2605(k)(1)(C) of RESPA, discussed *infra*, and not what constitutes a *loan-servicing* QWR under § 2605(e)).

9

foreclosure" because no foreclosure was *pending* at the time plaintiffs sent that letter. *Id.*; ECF No. 5-3 at 2 (acknowledging that defendant withdrew plaintiffs' foreclosure). Plaintiffs counters that the statute does not use the phrase "avoiding a *pending* foreclosure." ECF No. 14 at 8–9. They therefore contend that this statute covers their requests because those requests were related to loss mitigation or reinstatement payments, which are requests to correct errors related to avoiding a *potential* foreclosure. *See id.*

While plaintiffs appear to have the more persuasive argument purely based on the plain text of the statute, I nevertheless find that their claim under § 2605(k)(1)(C) must be dismissed for a simple reason. That is, defendant *actually responded* to plaintiffs' October 2014 letter and that is all that that subsection of RESPA apparently requires. *See* ECF No. 21-1 at ¶18; ECF No. 5-3 at 2. At the very least, defendant took "timely action to respond" to plaintiffs' requests by including a loss mitigation application for plaintiffs to fill out along with its response to plaintiffs' letter. *See* ECF No. 5-3 at 35–37; *but cf. Payne v. Seterus Inc.*, CV 16-0203, 2016 WL 4521659, at *6 (W.D. La. Aug. 26, 2016) (borrower stated a claim under 12 U.S.C. § 2605(e)(2) where servicer's response merely cited the bankruptcy proceeding as the answer to the borrower's inquiry and gave "no explanation as to why the proceeding would bar it from providing the requested information"); *Carmichael v. Saxon Mortg. Servs., Inc.*, 2:11-CV-1110-MEF, 2013 WL 4786120, at *3 (M.D. Ala. Sept. 6, 2013) (denying summary judgment on a § 2605(e) claim where the evidence showed that upon receiving a fax that qualified as a QWR that the servicer merely acknowledged receipt and then failed to subsequently respond ever again).

Accordingly, there is no plausible way defendant could be held liable for failing to take timely action to respond to plaintiffs' requests under § 2605(k)(1)(C) regardless of whether

plaintiffs' requests were covered under the statute.[6] *See* 12 U.S.C. § 2605(k)(1)(C); *see Mader v. Wells Fargo Bank, N.A.*, 16-CV-309-LM, 2017 WL 177619, at *5 (D.N.H. Jan. 17, 2017) (borrower did not state a claim for a § 2605(k)(1)(C) violation where the borrower, among other things, did not even allege that the servicer failed to respond to a request to correct errors related to avoiding foreclosure); *Gasparik v. Fed. Nat'l Mortg. Ass'n, 16-CV-147-AJ*, 2016 WL 7015672, at *7 (D.N.H. Dec. 1, 2016) (rejecting the borrower's conclusory allegation that the servicer violated § 2605(k)(1)(C) by not responding to the borrower's requests because the borrower's own complaint was "replete with allegations that Fannie Mae *did in fact respond* to the plaintiff's requests to avoid foreclosure") (emphasis added).

---

[6] Some courts, namely those in the Eleventh Circuit, appear to interpret a prima facie case under § 2605(k)(1)(C) to include an allegation that the servicer failed to *adequately* respond. *See, e.g.*, *Hudgins v. Seterus, Inc.*, 192 F. Supp. 3d 1343, 1348 (S.D. Fla. 2016). That qualifier, however, does not exist in the statute. In any event, to the extent this is a substantive requirement rather than merely a procedural one, *cf. Graham v. Mortgage Elec. Registration Sys., Inc.*, 2:11-CV-00253-RWS, 2012 WL 527665, at *4 (N.D. Ga. Feb. 17, 2012) (to state a claim under § 2605(e) a borrower must allege, among other things, that "the defendant failed to adequately respond *within the statutory period of 20 days or 60 days*") (emphasis added), I find that defendant adequately responded here. *See* ECF Nos. 5-1, 5-3. For instance, in response to plaintiffs' requests about information related to what defendant had done regarding loss mitigation, defendant explained that it "explored a variety of loss mitigation options" prior to foreclosure and attached all of the numerous letters it sent plaintiffs in 2009 and 2010 that specifically explained the loss mitigation options defendant offered to plaintiffs. ECF No. 5-3 at 2, 17–33. Plaintiffs refer to these as mere "form letters" that were vague and non-responsive to their requests for information about what defendant had actually done regarding loss mitigation. ECF No. 21-1 at ¶19; ECF No. 14 at 3–4. After reading them, I must disagree.

Furthermore, in response to plaintiffs' requests for information about their payments, defendant explained that plaintiffs would "no longer [be] personally obligated to pay the mortgage debt" but that "the security agreement [between the parties still] allows [for] foreclosure . . . ." ECF No. 5-3 at 2. It explained that during plaintiffs' bankruptcy, defendant had "operated pursuant to controlling bankruptcy law and [plaintiffs'] court ordered reorganization plan." *Id.* Defendant then wrote: "With respect to your questions regarding payments under the mortgage loan, we refer you to the promissory Note and Deed of Trust. Enclosed are copies for your convenience." *Id.* at 3. Those documents subsequently spelled out both parties' rights and obligations as it pertained to payments of plaintiffs' mortgage. *Id.* at 5–16. Finally, provided at the bottom of the letter was defendant's contact information if plaintiffs had any additional questions. *Id.* Given that response, plaintiffs cannot plausibly allege that defendant failed to "adequately" respond to them. *See* ECF No. 21-1 at ¶1.

Plaintiffs nevertheless allege in their complaint that despite ostensibly responding to their letter, defendants failed to respond *in good faith* or *truthfully*.[7] ECF No. 3 at ¶1. However, just like how I am unwilling to read into the statute the requirement of a *pending* foreclosure, see *supra*, I am also unwilling to read into this specific subsection of RESPA a requirement that a servicer must comply with either of those unwritten standards.[8] Therefore, simply put, because § 2605(k)(1)(C) merely requires servicers to either respond or take timely action to respond to borrowers' requests to correct certain and because I find that here, unlike in 2011, defendants actually responded, plaintiffs have no claim under § 2605(k)(1)(C).

3. **12 U.S.C. § 2605(k)(1)(E).**

Lastly, plaintiffs appear to assert that defendant also violated § 2605(k)(1)(E) of RESPA. *See* ECF No. 21-1 at ¶1 (merely citing § 2605(k)). That broad, "catch-all" statute states that a servicer shall not "fail to comply with any other obligation found by [the CFPB] . . . to be appropriate to carry out the consumer protection purposes of this chapter. 12 U.S.C. § 2605(k)(1)(E). As mentioned above, plaintiffs play hide the ball in their complaint with which specific CFPB regulation they believe defendant has violated. However, from the parties'

---

[7] The apparent basis for plaintiffs' argument regarding bad faith is a settlement agreement defendant signed in an unrelated case where it apparently agreed to pay roughly $1.5 billion to "foreclosed borrowers" for reasons on which plaintiffs do not elaborate. ECF No. 21-1 at ¶20. Plaintiffs do not appear to have been one of those covered borrowers. I fail to see the import of this allegation.

[8] The CFPB's interpretation of this statute is unhelpful in resolving what standard governs a servicer's response under § 2605(k)(1)(C). *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10,696, 10,739 (Feb. 14, 2013) (merely reiterating the requirement that a servicer respond but explaining in greater depth to what kinds of requests a service must reply). Similarly, it does not appear that any courts have read this standard into § 2605(k)(1)(C).

subsequent arguments it appears the "obligations" plaintiffs argue defendant failed to comply with are those found at 12 C.F.R. §§ 1024.35 and 1024.39.[9] *See* ECF No. 14 at 9–12.

These regulations, however, offer plaintiffs little help. For starters, 12 C.F.R. § 1024.35 is a regulation that merely fleshes out a servicer's obligations under § 2605(k)(1)(C). *See* 12 C.F.R. § 1024.35. In particular, it expands the kinds of "errors" a borrower can complain about and therefore the types of notices a servicer must respond to under § 2605(k)(1)(C). *Christenson*, 2014 WL 4637119, at *3. It also states that if a borrower gives a servicer written notice asserting a covered type of error then the servicer "shall comply with the requirements of this section"—i.e., various procedural hurdles governing how a servicer must respond. *See* 12 C.F.R. § 1023.35(a)–(i).

As explained above, even if plaintiffs' letter falls under one of the enumerated "errors" of 12 C.F.R. § 1024.35, defendant actually responded to plaintiffs' letter. *See supra* Part III.A.2. Furthermore, because plaintiffs do not allege that defendant violated any specific subsection of 12 C.F.R. § 1024.35 aside from their broad allegation that defendant failed to respond "in good faith" or "truthfully" (neither of which, again, are requirements found in the text of the regulation), I find that plaintiffs have failed to state a plausible claim that defendant violated 12 U.S.C. § 2605(k)(1)(E) by failing to adhere to 12 C.F.R. § 1024.35.

Similarly, 12 C.F.R. § 1024.39 cannot save plaintiffs' claim either. That regulation, which went into effect on January 10, 2014, requires a servicer to respond to delinquent borrowers within 45 days of their delinquency to inform them of loss mitigation options. *See* 12 C.F.R. § 1024.39. Plaintiffs, however, became delinquent in May of 2010. As numerous courts and the CFPB itself have noted, the CFPB's regulations do not have retroactive enforcement.

---

[9] Neither 12 C.F.R. § 1024.35 nor 12 C.F.R. § 1024.39 appear to provide for a private cause of action. *See Gresham v. Wells Fargo Bank, N.A.*, 642 F. App'x 355, 359 n.16 (5th Cir. 2016). In any event, plaintiffs apparently seek to enforce the "obligations" found therein through § 2605(k)(1)(E) of RESPA.

*See, e.g.*, *Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 297 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 272 (2015) (explaining that the CFPB has "expressly disclaim[ed] any retroactive application of" Regulation X) (citing Amendments to the 2013 Mortgage Rules Under the Equal Credit Opportunity Act (Regulation B), Real Estate Settlement Procedures Act (Regulation X), and the Truth in Lending Act (Regulation Z), 78 Fed. Reg. 60,382, 60,384 (October 1, 2013)). Thus, plaintiffs cannot plausibly state a claim that defendant violated § 2605(k)(1)(E) by failing to adhere to obligations under 12 C.F.R. § 1024.39.

For those reasons, I find that dismissal of plaintiffs' first claim under RESPA is warranted. Accordingly, the Court GRANTS defendant's motion to dismiss plaintiffs' first claim for relief and dismisses that claim with prejudice.

### B. Plaintiffs' Claim for Declaratory Relief.

Next, plaintiffs assert a claim for declaratory relief. *See* ECF No. 21-1 at ¶¶23–28. This claim seeks a ruling that defendant cannot enforce a breach of contract claim on plaintiffs' mortgage. *Id.* In other words, they want a ruling that extinguishes the lien on their property. *Id.*

To support such a claim, plaintiffs make two arguments. First, they argue that defendant's claim on the note is time barred under the applicable statute of limitations. ECF No. 35 at 1–5. Second, they argue that such a claim was a compulsory counterclaim in the parties' previous lawsuit and that defendant waived it by failing to raise it. ECF No. 14 at 13–15. Defendant counters that the statute of limitations has not run because after defaulting plaintiffs promised to re-pay their debt during their Chapter 13 bankruptcy and voluntarily made payments to do exactly that up until 2014. ECF No. 34 at 1–5. It then argues that plaintiffs' compulsory counterclaim argument fails by pointing out that its claim on the note was the subject of another

pending action and therefore that it did not need to raise it in the parties' earlier suit. ECF No. 5 at 13–15. I agree with all of defendant's arguments.

First, I find that the six-year statute of limitations under Colorado law for recovering a debt has not expired. *See* C.R.S. § 13-80-103.5(1)(a). After defaulting on their loan, plaintiffs voluntarily re-affirmed that they would repay their debt to defendant.[10] *See* ECF No. 5-11 at 6 (providing that plaintiffs' "[d]efaults *shall be cured* and [that] *regular payments shall be made*: [to] CitiMortgage, Inc.") (emphasis added); 11 U.S.C. § 1321 (Chapter 13 bankruptcy is filed voluntarily by a debtor).

Such an affirmation, as well as plaintiffs' subsequent payments to defendant during bankruptcy, see ECF No. 5-1 at 4; ECF No. 5-13 at 2, undoubtedly "renewed" the statute of limitations on plaintiffs' debt, see *Hutchins v. La Plata Mountain Res., Inc.*, 373 P.3d 582, 585 (Colo. 2016) ("That an implicit promise to pay, either in the form of a partial payment . . . or an acknowledgment meeting these conditions . . . will extend the statute of limitations has remained, largely unquestioned, the law of this jurisdiction.") (citations omitted); *Drake v. Tyner*, 914 P.2d 519, 523 (Colo. App. 1996) (statute of limitations period begins anew with each part payment); *see also Koyle v. Sand Canyon Corp.*, 2:15-CV-00239, 2016 WL 917927, at *4 (D. Utah Mar. 8, 2016), *aff'd*, 16-4035, 2017 WL 1192186 (10th Cir. Mar. 31, 2017) (Here, [the borrower]

---

[10] Plaintiffs cite cases holding that "promises" to lenders to make payments that are merely conditions of continuing a bankruptcy's automatic stay do not constitute a promise to pay the underlying debt. *See, e.g., U.S. Bank Nat'l Ass'n v. Martin*, 144 A.D.3d 891, 891 (N.Y. App. Div. 2016). These cases are inapplicable, however, because plaintiffs' promise was not made as part of one to extend the bankruptcy's stay, but rather came as part of their Chapter 13 plan to retain their property and obtain a discharge under the Bankruptcy Code. *See* ECF No. 5-11; 11 U.S.C. §§ 1322, 1325, 1328.

acknowledged the debt during his second Chapter 13 bankruptcy resulting in a renewal of [Utah's] six year statute of limitations period.").[11]

Second, I find that defendant has not waived its claim on the note because that claim was not a compulsory counterclaim in the parties' prior suit.[12] *See* Fed. R. Civ. P. 13(a)(2). First, defendant's claim for breach of contract did not concern the "subject matter" of the parties' earlier case—i.e., whether defendant violated RESPA by failing to respond or whether it violated Colorado law by allegedly making false statements regarding potential loss mitigation options. *See id.*; ECF No. 5-6 (plaintiffs' third amended complaint in the parties' prior lawsuit). Furthermore, at the time plaintiffs' filed that earlier lawsuit defendant had already commenced foreclosure proceedings and plaintiffs themselves had already filed for Chapter 13 bankruptcy. *See Christenson*, 2013 WL 5291947, at *3. Thus, defendant's claim was subject to at least two other "pending action[s]" and therefore defendant did not have to "use it or lose it." *See* Fed. R. Civ. P. 13(a)(2); *see also* C.R.C.P. 13(a)(1) (same exception). For those reasons, the Court GRANTS defendant's motion to dismiss plaintiffs' second claim for relief and dismisses that claim with prejudice as well.

---

[11] Plaintiffs argue that the Colorado Credit Statute of Frauds changes the analysis because it prohibits implying a credit agreement under any circumstances. ECF No. 35 at 3 (citing C.R.S. § 38-10-124(2). I disagree. That statute relates to the enforcement of a credit agreement, not the application of statute of limitations provisions under Colorado law. Furthermore, there is no need to even imply a credit agreement between these parties because their agreement was in writing and signed by plaintiffs. *See* C.R.S. § 38-10-124(2).

[12] Plaintiffs confusingly argue that "[d]efendant's motion [to dismiss] does not address the request that the Court declare that the loss mitigation conditions have failed and that the Court declare that foreclosure and acceleration may not take place." ECF No. 14 at 15. Defendant appears willing to accept an application from plaintiffs for loss mitigation. *See* ECF No. 5-3. The Court finds no basis under plaintiffs' complaint to declare that such conditions have already failed or that defendant may not foreclose on plaintiffs or otherwise accelerate their debt under the parties' contracts.

## ORDER

For the reasons above, the Court GRANTS defendant's motion to dismiss [ECF No. 5]. Plaintiffs' claims for RESPA violations and for declaratory relief contained within their first amended complaint are therefore dismissed with prejudice. *See* ECF No. 21-1. As the prevailing party, defendant is awarded its reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 1st day of June, 2017.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge